Good morning, Your Honors. Victoria Biesman, representing petitioner. The case before the bar today is much more clear. The adj. had concluded that the petitioner's testimony was credible. The issue here is whether he has met his burden of proof to qualify for the asylum. And I believe that he did. I have some trouble here. He's three weeks in the Army, and he's already a complainer, and he says they persecuted me by giving me night duty. My impression is that in virtually every firm, whether it's the Army or whether it's a 24-hour police station or whether it's a 24-hour store, whoever's junior gets the night shift. No big deal. You're junior, you get the night shift, you get some seniority, you start getting swing shift or day shift. I agree, Your Honor. However, I believe that the issue here is that the petitioner has been witness to the murder, that he was 19 years old at the time, and that he had guts to stand up and to tell the truth. And for that and only that reason, he has been persecuted. How was he persecuted? How he was persecuted? He was detained by the military for three months. He was placed in a cold cell. The military poured cold water on him. They beat him up. They were forcing him to change his testimony, to clear up the names of his immediate commanders, which were involved in the murder of them. Is my recollection right that he told them no, they did nothing, and he had some parliamentary protection? That's not exactly, you know, let me explain. The private that has been murdered, he has been a nephew of the member of the parliament. And, of course, that member of the parliament, he had a personal interest in trying to, you know, to prosecute the military personnel. However, it did not help the petitioner. Petitioner gave the truthful statement. He refused to change his statement. He gave the testimony and the statement to the media, and at 19 years old, he did what was, you know, what he felt it was his duty to do. And that's what he testified in court. And Judge Renner, she did find him credible. She felt that he was truthfully testifying in a courtroom. However, she felt she had trouble because by the fact, she was troubled by the fact that he deserted from the army, not immediately from the hospital, but when he was You cannot just simply desert from the army. Some arrangements had to be made. Well, her main problem with the case was that the bad things that happened to him, she says, were not on account of a protected ground. These are corrupt officials. This is not political opinion or religious prejudice or race prejudice. However, Your Honor, I may disagree. I believe that it was, even though that he considered that he was just doing his duty, I believe that the military considered that he was the one who sided with the opposition because the member of the parliament whose nephew has been killed, he was a member of the clear-cut case of desertion. I believe that this man, he ran for his life. He has been Forget the desertion for a second. What is the nexus to a political opinion as opposed to just he's the victim of corrupt people who don't want him to testify against him? Your Honor, first of all, I believe that this case is based on Grava, and this is a whistleblower case because he had power to, you know, like, tell the truth and to point that there was corruption, that there was a murder committed by the military personnel. The issue is here that political opinion was imputed to him, even though that at the time Let me ask about the same thing. I'm not sure that we're getting across to you. There are big corruption problems in a lot of countries, and it's often the most important political problem there is. And sometimes there's a party that says our platform is we're against corruption. It looks like that's how Hamas won in the Palestinian territories. Oh, well, forget about terrorism for now. We're against corruption. That can be a political position. But just because it can be doesn't mean that it always is. If what you're saying is somebody, I saw somebody commit a crime, and you report it, and the people that want to protect the criminal don't do the right thing, and they try to stop you from talking, that doesn't mean that you're engaged in a political movement against corruption. They attribute anti-corruption views to you, and they want to keep things as they are, and so they persecute you. They're just trying to shut up a witness, and we need help drawing the distinction. Your Honor, I believe that this Court has long recognized the doctrine of hazardal neutrality, and that this case, it goes a step further, that he had made a conscious choice, conscious choice to say the truth and conscious choice to side up with the forces that are trying to stop corruption. How do we know that they're forces trying to stop corruption as opposed to just individuals who have been victims of corrupt people and don't have any opposition to corruption per se, just don't like being the victims of it? Well, Your Honor, it's a well-recognized fact that there is corruption in Armenia, and that there is opposition in Armenia, people who are trying to stop Kacharyan and his appointed authorities from doing what they are doing to the country, because this is like a second genocide of Armenia. There is more Armenians now in Glendale than left in Armenia, I believe. I'd like you to – how should I explain? I believe that – Look, sometimes people are against the corrupt individuals, not because they're against corruption, just because they want their hands in the till instead of the other guy's hands in the till.  I wish that cop hadn't stopped me. He just did it because he wants $10. I'll give him $10 and he'll let me go. Well, but this is not exactly the case which you just described. This is the case when a 19-year-old, even subsequent to three months in detention, subsequent to torture, he still refuses to change his story, and he chooses – he makes conscious choice to tell the truth, and conscious choice to put people who are guilty of murdering, you know, like a private for who knows what reasons. He made a choice to tell the truth, okay? Once again, I do believe that this case has nothing to do with the – you know, the government tries to parallel this case to the drug trafficking cases. This is distinguishable from that. I believe that this case is in line with drama. I believe that this is a case of the whistleblower case where this 19-year-old had guts to stand up to the Armenian military. I believe that if he goes back, he will face severe punishment for what he did. And based on that, I'm asking, you know, like to grant the petition. Also, I would like to point out that – I guess the real issue is this question that's posed in Hassan versus Ashcroft. We say there, in Grava, we emphasize that the salient question in determining whether the act of whistleblowing is political is whether it was directed toward a governing institution or only against individuals whose corruption was aberrational. How do we deal with that? And here he stands up not to one individual. He stands up to the entire military. He's being intimidated by the top commanders. And he still chooses to tell the truth and to stand up by his testimony. He's opposing not to only the officer that committed the crime. He's opposing to the regime. He's opposing to the way of life. He's opposing to the way that Armenian military treats, you know, the soldiers in the military. Therefore, I believe that there is an imputed political opinion. It's not the issue what he believes. The issue is how they treated him. What did they believe? Did they believe that he held an opinion that was contrary to what they tried to force him to do? And here it's clearly that, you know, they believe that he is the opponent. He chooses to stand up to the regime. And therefore, I believe that, yes, he has clearly imputed political opinion. Furthermore, I'd like to bring one last case. You mentioned a case, but then you better be wrapping it up. Yes. It's Velarde v. INS. Which one? Velarde. V-E-L-A-R-D-E v. INS, 140 Federal Circuit 1305-1311. It's 1998. In that case, it was also, you know, the political opinion was granted to the former bodyguard of the daughters of the former Peruvian presidents. Also in Montesina v. INS, ex-soldier eligible for asylum because guerrilla persecutors identified him politically with the Salvadorian government. And here military, Armenian military had identified Pashalyan with political opposition in Armenia. This is Judge Lay. Yes. Can you hear me? Yes. How do you reconcile this case with the Elias Zacharias case, the one that Judge Scalia wrote? Are you familiar with that? No. Well, he's setting the standard there as to what constitutes sufficient evidence of persecution. And it just seems to me it's a very close question whether or not he's being compelled to kill other prisoners when it's against his moral principles. Is that your approach? Your Honor, I believe that in this case, yes, he chose to stand up by his morals and he stood up to the, you know, like to what he was forced to do, to change, to amend his story and to clear up the Armenian military. Furthermore, I believe that in this case, the fact that he had sustained severe physical abuse would amount that he has, you know, sustained past persecution. And I'd like to summarize, if you could give me a moment. I have a case, I had a case before Judge Bank, and it has been approved. And the mother, she has been granted asylum. However, the son, his case was denied by Judge Peters, and he was sent back to Armenia. Believe it or not, he was taken to the KGB. After payment of the bribe, he was taken to Armenian army. Twenty days ago, there was an explosion, and this man who just turned 21, he lost one of his limbs. He has no leg anymore. This story, he's, you know, like in 20 days, it's widely known in Armenian community. And the petitioner who sits here right behind, he knows about it. And he's petrified to go back because he knows that his fate could be very much similar to the fate of that young man. Thank you, counsel. Counsel? May it please the Court. This case is about efforts to cover up a crime. It is not about efforts to punish Mr. Pashalyan for any views imputed to him. There are subtle differences between an individual who claims persecution because he's dealing with an alleged persecutor who is part of the military. I have a lot of trouble figuring out these corruption cases, and I have trouble figuring out our authorities. We Americans tend to think of politics as you're a Democrat or you're a Republican, you're for higher taxes or you're for lower taxes. Policy questions, you're for one policy or another that the government would pursue. And we think of persecution for political opinion as the government sending police or goons around to beat up everybody who's for higher taxes or beat up everybody who's for lower taxes. But in a lot of countries, politics really isn't about policy. It's about who gets to steal. And I'm wondering whether opposition to the stealing is in the nature of political opinion or support for the stealing is in the nature of political opinion and whether there's any way to do it really except by opposing some or being willing to testify in some individual case. Here, it was the killing worse than the stealing. And an Army cover-up in the country report says there's a lot of corruption in Armenia. I don't really, frankly, know how to deal with it in terms of the Elias Zacharias framework in our cases. Your Honor, it is difficult, but as the Supreme Court recognized in Elias Zacharias and this Court recognized in Senga, there is a subtle difference. And what happens is the asylum applicant bears the burden of establishing the actual connection. Because of the difficulties at times, there has to be more than just an inference based on the fact that the alleged persecutor happens to be part of the military. Because there are cases where it becomes more personal in nature. It's not just about the military seeking out the applicant. What is the burden of proof? Is it beyond a reasonable doubt? Is it beyond all doubt? Is it the ---- Your Honor, in order to establish asylum, then the applicant bears the burden of establishing a well-founded fear of ---- By a preponderance of the evidence? Your Honor, it's substantial evidence. And in reviewing it, this Court would have to determine that the record compels a finding that any persecution would be on account of any political opinion imputed to him. And why doesn't his testimony coupled with the country conditions report make that burden, satisfy that burden? Your Honor, because in looking at the record, Petitioner even admits that there was no basis for any imputed political opinion. Here at 169, in his asylum application statement he attached, he stated that he was simply an undesirable witness of the crime committed. He also states in his testimony and his asylum application that he only refused to change his testimony because he had already provided a written statement and testimony to other branches of the government, that being the military prosecutor's office as well as the deputy of the National Assembly who was a parliament member. So it wasn't about him stating that I opposed the political thoughts or I opposed the corruption of the military. Rather, it was because I made an honest statement as to what I witnessed, and I couldn't change it because I had already made statements to other people about it. It wasn't anything like in other cases, for example, Nauru, where this Court found that the individual who was in the military during a meeting simply stood up and said, I opposed the war, and that this was wrong. There's no evidence here to indicate that there was any connection between the attention that he got from certain military figures as compared to other military figures in the prosecutor's office or other branches of the government, that being the defense ministry. There's simply no evidence of that. Here he bears the burden of showing that there is some sort of connection. He simply relies on evidence. How does he bear his burden? What is his burden? How much evidence does he have to come forward with? Your Honor, that question, although important, doesn't even bear it here because he has it. Well, you're the one who brought up his burden of proof. I mean, he says, I was persecuted because I am going to blow the whistle on these corrupt people. And if I recall correctly, the country conditions report is not inconsistent with what he describes. When you talk about he hasn't carried his burden of proof, I'm not sure what more he needs to go forward with. Your Honor, he has to establish that the military figures in this case that were beating him and mistreating him, that they were doing so because they had a – they believed that he was out against the entire military, not because he had testified against them personally, but rather because he opposed them as a whole entity. There's no evidence here of it at all. He relies solely on an inference based on the fact that these people happen to be military figures. So if we take out the whole fact that this matter involves military members, all we have is some criminals who were out to change the – See, if you take out the fact that they're not government officials, it becomes a much easier case, I grant you. But now that they are – Yes, Your Honor. And in that regard, there is still that subtle difference that this Court, again, and the Supreme Court has stated is that he has to at least show something more that may perhaps there were – Does he under – what about that crazy case, Sagadiak, where they killed the guy's monkey? Your Honor, I'm not familiar with the case. If Your Honor could share some more information, that's correct. They killed the guy's monkey. And we seem to say that if you expose corruption and the person you're exposing works for the government, that's enough. That seems like pushing it to me. But it could probably be brought into line with the other opinions where it's pervasive rather than an individual aberration. Yes, Your Honor. And in this case, he hasn't gone beyond establishing that it was an individual aberration because he only talks about the fact that his actions were based not on any kind of action against the whole military. In fact, he even spoke with some of his – when he was returned to the military units. How big a – a lot of political opinion is formed by one little thing, and then the person starts seeing the world in those terms. Like, oh, a person might see some residences that are being condemned for highway and say, One little thing sometimes triggers a person's political outlook in life. I don't see the inconsistency in his conduct being triggered by seeing a murder. Your Honor, I'm not sure I understand the question. As I understand it, what you're saying is it's not political opinion unless it's a cohesive ideology, and all he did was respond to one instance of corruption. Your Honor, I'm saying perhaps in a different way. It's that he has to establish that it was beyond that he – that there was some sort of ideology implied here. He hasn't done so. Simply by mentioning the country reports that show that there is corruption does not establish that these military figures, especially when you have conflicting actions by different members of the military, his own unit and the officers within his unit had indicated you should be careful because you'll be subject to the same treatment as his friend who had died and had been killed. And then you have the Ministry of Defense trying to help him and trying to really investigate the corruption, and then you have the military prosecutor's office who is trying to also investigate the corruption. What you have in contrast to what he's established is that there were some military figures, one who was high-powered and who many of the other soldiers feared, that this person was trying to keep him from testifying, trying to incriminate – trying to keep him from incriminating the individual. He even admits that he has only acted based on the fact that he was an undesirable witness. So when you look at that in the cumulative and you look at the entire record, there's nothing that compels a finding that he was persecuted on account of any imputed political opinion. He has not done so. He cannot rely on any inference. And as a result, the court must sustain the decision and deny the petition. Thank you. Thank you, counsel. Your Honor, I would like to – I think you went way over time, so – Just one statement. Give me 30 seconds. Your Honor, I would like you to emphasize that you should look not for the words but for the actions. In the case in the bar, this individual, he stood up to the lawlessness and corruption reigning in Armenian military. Moreover, he was for three months in detention, being tortured. And nobody in Armenian government, even though they knew that he was, you know, like being a witness, and they should have protected him as a witness, nobody stood up to his protection. Moreover, he was held by the very office of the military persecutors. They did not – they didn't do anything to, you know, help him. You know, they just kept him in detention and were forcing him to change the testimony. Thank you, counsel. Thank you, Ms. Mayer. Beshalian v. Gonzales is submitted. Woolridge v. California, Hinterleitner v. Commissioner, United States v. Rocha, and United States v. Tolosa Sabala are submitted. We return. All rise. Hear ye, hear ye. All those having sentences before this honorable court in the United States Court of Appeals for the ninth circuit shall now depart for the court now stands adjourned.
judges: Lay, Kleinfeld, Silverman